IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN DOE, M.D., PH.D., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:24-CV-49-MJT-CLS |
| | § | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § | |
| | § | |
| *Defendant*. | § | |

### ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the District Court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72. On October 1, 2024, the Honorable Christine L. Stetson, United States Magistrate Judge, issued a Report and Recommendation [Dkt. 18] advising the Court to grant Defendant U.S. Department of Health and Human Services's (HHS's) Motion to Dismiss [Dkt. 11] and deny Plaintiff Dr. John Doe's Motion to Transfer [Dkt. 5].

### I.   Plaintiff Dr. John Doe's Objections to the Report and Recommendation

On October 24, 2024, Plaintiff Dr. John Doe filed timely objections [Dkt. 22] to the Report and Recommendation [Dkt. 18]. HHS filed a timely response to Dr. Doe's objections [Dkt. 22] on November 7, 2024. [Dkt. 23]. A party who timely files specific, written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of findings

or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. "Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1412 (5th Cir. 1996) (en banc).

### A. The report did not fail to accept as true the complaint's factual allegations

Dr. Doe objects that the report "failed to accept as true the Complaint's well-pleaded factual allegations." [Dkt. 22, ¶ 1]; *see also id.* ¶ 7 ("The constitutional deprivation must be accepted as true at the pleading stage) (alteration in original). According to Dr. Doe, the report relied on "a selective summary of 3 decisions[] from the 2012 [D.C.] action, decided under different law and facts."[1] *Id.* ¶ 1. He proceeds, in summary fashion, to lay out what he considers to be the complaint's factual allegations premised on alleged "new" evidence. *Id.* ¶ 2.

Dr. Doe fundamentally misunderstands Judge Stetson's report. Pursuant to Federal Rule of Civil Procedure 12(b)(6), HHS permissibly moved for dismissal on the grounds of *res judicata*. *See* [Dkt. 18 at 16 (explaining that *res judicata* may be raised in a Rule 12(b)(6) motion to dismiss) (quoting *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020))]. Accordingly, Judge Stetson correctly took judicial notice of Dr. Doe's 2010 federal lawsuit in the Eastern District of New York, his 2012 federal lawsuit in the District of Columbia, and his 2012 New York

---

[1] The three cases are *DOE v. Rogers*, 139 F. Supp. 3d 120 (D.D.C. 2015) ("*Doe I*"), [*Doe*] *v. Rogers*, 656 F. Supp. 3d 78 (D.D.C. 2023) ("*Doe II*"), and *Doe v. Rodgers*, No. 20-5297, 2023 WL 1978697 (D.C. Cir. Feb. 14, 2023) ("*Doe III*").

state lawsuit, as well as the filings therein. *Id.* at 5–6 & n.4; *see Rangel v. Case & Assocs. Properties, Inc.*, No. EP-18-CV-00076-DCG, 2018 WL 3420825, *2 (W.D. Tex. July 12, 2018) ("In ruling on such a [Rule 12(b)(6)] motion, a court may take judicial notice of matters of public record, including publicly available court documents filed in a prior case.") (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588–89 (5th Cir. 2020) (discussing Federal Rule of Evidence 201 and doctrine of judicial notice under which one court may take notice of another court's judicial actions, including records of litigation, in deciding a Rule 12(b)(6) motion to dismiss).

The report then meticulously combed through Dr. Doe's complaint and properly determined consistent with controlling law that he did not "come forth with legitimate new facts or evidence of fraud" to overcome *res judicata*. [Dkt. 18 at 17–32]. Rather, Dr. Doe "was in possession of *every* single piece of allegedly 'new' evidence while the D.C. Action was pending" and simply did not present it to that court. *Id.* at 24. This is legally distinct from Dr. Doe's objection that the report did not "accept[] as true all well-pleaded factual allegations." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)). Indeed, the implication of Dr. Doe's argument would reduce *res judicata*, that "'venerable legal canon' that insures the finality of judgments" to a shallow husk. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)). The result would effectively negate the understanding that a party may raise *res judicata* in a Rule 12(b)(6) motion to dismiss. *Anderson*, 953 F.3d at 314. Dr. Doe's first objection [Dkt. 22, ¶¶ 1–2, 7] is overruled.

B.  The report did not misinterpret *ICC v. Bhd. of Locomotive Eng'rs*

Dr. Doe's fourth cause of action alleged that HHS violated the Administrative Procedures Act ("APA") when the Secretary denied Dr. Doe's request to reconsider the June 25, 2012, secretarial review decision in light of his "new" evidence of fraud. [Dkt. 18 at 34.] Because Dr. Doe's reconsideration request "was not actually based on new evidence," Judge Stetson found the Secretary's denial not judicially reviewable agency action. *Id.* (citation and quotation marks omitted). Dr. Doe objects that this finding was premised on a misreading of *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270 (1987) ("*BLE*"). [Dkt. 22, ¶ 3].

Under the APA, a person "suffering a legal wrong because of agency action … is entitled to judicial review." 5 U.S.C. § 702. In *BLE*, the United States Supreme Court carved out an exception, holding that an agency's denial of a petition for reconsideration is generally unreviewable. 482 U.S. at 278–82. But the agency decision becomes reviewable when "the request for reconsideration is based upon new evidence or changed circumstances." *Id.* at 284. For the purposes of the exception, Dr. Doe claims that "new evidence" is that which the petitioner did not possess or control "at the time of the prior administrative proceeding," as opposed to "the pendency of a prior lawsuit." [Dkt. 22, ¶ 3 (alteration in original)].

Such a position places empty formalism over the facts of this case and *BLE's* core concern that, "[i]f review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration." 482 U.S. at 279. As Judge Stetson explained, "Dr. Doe could have also turned [all] the evidence over to HHS for review before the D.C. district court ruled on his motion for re-argument" claiming that the secretarial review process was tainted by fraud. [Dkt. 18 at 24 (citation omitted)]; *see also id.* at 37 ("Dr. Doe was in possession of all the evidence and could have had HHS review it before the

4

D.C. district court ruled on his motion for re-argument and entered final judgment in that case.") (citation omitted).  The D.C. district court denied the motion because "Dr. Doe had rebuffed HHS's overture to review the evidence in an attempt to 'bypass' agency review."  *Id.* at 24 (citation omitted).

Thus, it was Dr. Doe who "deprived [himself] of all opportunity for judicial consideration," as well as agency review.  *BLE*, 482 U.S. at 279.  Dr. Doe conceded as much in his complaint, arguing that "had [he] made 17 *seriatim* new submissions to HHS each time a deposition was completed, or had filed 17 supplemental pleadings with the court, HHS would have argued it was being unfairly burdened."  [Dkt. 18 at 24–25 (quoting Dkt. 12 at 28–29)].  Tellingly, Dr. Doe reiterates the same in his objections, saying that he "wanted to avoid *seriatim* Requests for Sec. Review."  [Dkt. 22 at 10].  The Court does not read *BLE* as permitting a petitioner to blatantly bypass what he anticipates to be unfavorable agency and federal district court review.  Dr. Doe's objection, *id.* ¶ 3, is overruled.[2]

This same reasoning also defeats Dr. Doe's attempt to construe HHS's offer to review his new evidence as somehow indefinite, and therefore HHS's recent denial of his reconsideration request is the agency trying to "have it both ways."  *Id.* ¶ 4(c).  This issue is straightforward: HHS offered to review Dr. Doe's "new" evidence during the D.C. Action.  [Dkt. 18 at 24].  Dr. Doe refused.  *Id.*  In turn, the D.C. district court refused to hear the "new" evidence as an impermissible circumvention of agency review.  *Id.*  The D.C. circuit court also declined to entertain the "new" evidence.  *Id.* at 13–14.  HHS then discretionarily denied Dr. Doe's request for reconsideration,

---

[2] In a footnote to this objection, Dr. Doe also claims that the report's finding that his evidence was not "new" for the purpose of triggering judicial review is a "*post hoc* rationale" because HHS "did not assert that Doe's evidence was not 'new.'" [Dkt. 22, ¶ 3 n.7].  Dr. Doe is confusing HHS's reason for denying his reconsideration request for the report's finding that HHS's decision to do so is not amenable to judicial review.  This is therefore not an instance of a court "supply[ing] a reasoned basis for the agency's action that the agency itself has not given." *Clean Water Action v. United States Env't Prot. Agency*, 936 F.3d 308, 312 (5th Cir. 2019).  Dr. Doe's objection [Dkt. 22, ¶ 3 n.7] is overruled.

5

with said decision not being judicially reviewable. *Id.* at 34–37. It was Dr. Doe's wait-and-see gambit that was an unsuccessful attempt to "have it both ways." This objection [Dkt. 22, ¶ 4(c)] is also overruled.

Insofar as Dr. Doe argues that *res judicata* does not bar relitigation of his three Fifth Amendment Due Process claims [Dkt. 22, ¶ 3], he is mistaken for the reasons provided in the report. [Dkt. 18 at 22–33]. Dr. Doe was in possession of every single piece of alleged "new" evidence while the D.C. Action was pending and failed to present it to that court. *Id.* at 22–24. He therefore did not "overcome *res judicata* because [he] 'had the opportunity to effectively litigate the underlying matter' during the D.C. Action." *Id.* at 24 (quoting *Nix v. Major League Baseball*, 62 F.4th 920, 930 n.9 (5th Cir. 2023)).

Dr. Doe also briefly re-urges his mistaken reliance on *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016), *as revised* (June 27, 2016), and *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), to advocate for a broad exception to *res judicata* based on any new evidence of fraud obtained after the filing of the initial complaint. [Dkt. 22 at 11–12]. The Court agrees with the report's finding that that "case[] clearly presented factual and procedural differences than the case at bar," namely actual new evidence obtained after the entry of a final judgment. [Dkt. 18 at 31–32]. Dr. Doe's objection [Dkt. 22, ¶ 3] is overruled in this respect too.

C. Dr. Doe's fourth cause of action is barred by *res judicata*

As explained above, the report found that the agency action underlying Dr. Doe's fourth cause of action alleging an APA violation was not judicially reviewable. [Dkt. 18 at 34–37]. Dr. Doe raises four separate objections to this conclusion. [Dkt. 22, ¶ 4(a)–(d)]. First, he claims that the report "invented its own 'reasoned basis' for HHS's refusal to reconsider" his request "that

6

HHS itself did not give in its" decision. *Id.* ¶ 4(a). Again, this is not true. Dr. Doe erroneously equates HHS's reason for denying his reconsideration request with the report's finding that HHS's decision to do so is not subject to judicial review. [Dkt. 18 at 34–37]. The report did not "invent[]" anything. This objection [Dkt. 22, ¶ 4(a)] is overruled.

Dr. Doe's second and third challenges concern HHS's 2018 NPDB Guidebook interpretation on whether to grant reconsideration requests. *Id.* ¶ 4(b)–(c). At the outset, Dr. Doe mistakenly relies on the 2001 edition of the NPDB Guidebook, *id.*, while the 2018 edition was in force when HHS denied his request. [Dkt. 18 at 2 n.1]. Any reliance on the 2001 Guidebook will therefore not be considered by the Court. *Nettles*, 677 F.2d at 410 n.8. Next, Dr. Doe argues that the relevant 2018 NPDB Guidebook interpretation indicates that HHS does not have discretion to deny a reconsideration request. [Dkt 22, ¶ 4(b)]. The Court disagrees, and concurs with the report's finding that "[a] plain reading of the relevant 2018 NPDB Guidebook interpretation demonstrates otherwise." [Dkt. 18 at 35]. The interpretation states that a physician "may" request reconsideration of a secretarial review decision, and that "[e]ither the previous decision will be affirmed or a revised final decision will be issued." 2018 NPDB GUIDEBOOK, at F–10. This "says nothing about" HHS's preliminary decision whether or not to grant a request for reconsideration. *AT&T Corp. v. F.C.C.*, 363 F.3d 504, 508 (D.C. Cir. 2004). The report's conclusion "that the 2018 Guidebook interpretation does not "'depart[] … from the long-standing rule'" that HHS may discretionarily deny a petition for reconsideration" is not contrary to law. [Dkt. 18 at 36 (quoting *id.*)]. This objection [Dkt. 22, ¶ 4(b)] is overruled.

Dr. Doe next claims, without any elaboration, that under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), "the reviewing court must conduct *de novo* review of whether the *Guidebooks* comport with the 5 USC § 706(2)(B) APA [sic] guarantee of due process." [Dkt.

7

22, ¶ 4(c)]. *Loper Bright* does not even refer or cite to 5 U.S.C. § 706(2)(B) and mandates no such review. 144 S. Ct. at 2254–73. This objection [Dkt. 22, ¶ 4(c)] is overruled. *See Nettles*, 677 F.2d at 410 n.8 ("Frivolous, conclusive or general objections need not be considered by the district court.").

Lastly, Dr. Doe argues that judicial estoppel permits relitigation of his APA cause of action. [Dkt. 22, ¶ 4(d)]. This claim is based on averments made by Peconic Bay Medical Center—Dr. Doe's former hospital employer—in Dr. Doe's lawsuit against them in his New York state action. *Id.* The report rightly concluded that "the fundamental defect [here] is that HHS did not make this argument," nor was HHS "even a party to" that lawsuit. [Dkt. 18 at 33]. To impute such statements to HHS in order to relitigate Dr. Doe's claim turns upside down "judicial estoppel's purpose to 'protect the integrity of the judicial process.'" *Id.* (quoting *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015)); *see also Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 644 (5th Cir. 2024) (Ramirez, J., concurring in part) ("The central, extremely important purpose of the [judicial estoppel] doctrine is to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants.") (citations and internal quotation marks omitted). This objection [Dkt. 22, ¶ 4(d)] is overruled.

### D. The report did not fail to apply *Loper Bright*

Dr. Doe claimed that *Loper Bright* overturning *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984), constituted a significant change in law warranting relitigation of his claims. [Dkt. 15 at 2–5]. He alleged that the district court in *Doe I* "expressly relied on the now overruled *Chevron*" and therefore "every word of [*Doe I*] is infected with the stench of *Chevron*-deference." *Id.* at 2, 4. The report found otherwise. [Dkt. 18 at 27–29]. Instantly, Dr. Doe specifically objects to the report's finding that "the issue of deference only arose [in *Doe I*] with

8

respect to his APA claims, specifically the Secretary's interpretations of 'investigation' and 'surrender' as used in the Act and NPDB Guidelines." [Dkts. 18 at 28 (citation omitted), 22, ¶ 5]. He argues this is "[u]ntrue." [Dkt. 22, ¶ 5]. But Dr. Doe's own two citations to *Doe I* in support of his position are from the same portions of that opinion cited by the report. *Compare* [Dkt. 18 at 28–29], *with* [Dkt. 22, ¶ 5]; *see also Doe I*, 139 F. Supp. 3d at 133–38, 144–51.

After review of *Doe I*, the Court agrees with the report's findings on this issue. Preliminarily, the D.C. district court's resolution of Dr. Doe's Fifth Amendment Due Process claims did not require a review of HHS's interpretation of the Health Care Quality Improvement Act or National Practitioner Data Bank ("NPDB") Guidelines, thus deference was not involved." [Dkt. 18 at 29 (quoting *Doe I*, 139 F. Supp. 3d at 153–67)]. As for the Secretary's interpretation of "investigation," the D.C. district court reasoned that "the level of deference [was] not determinative" to its review because the Secretary's interpretation "withst[oo]d scrutiny" under either "*Chevron* or the less forgiving prism of *Skidmore* [*v. Swift & Co.*, 323 U.S. 134 (1944)]." *Doe I*, 139 F. Supp. 3d at 134–36. *Loper Bright* may have overturned *Chevron*, but it left *Skidmore* intact. 144 S. Ct. at 2262.

As to the Secretary's interpretation of "surrender," the report accurately found that deference never arose because Dr. Doe "never alleged during the Secretarial review process that his resignation was not 'voluntary' because it was procured by fraud." [Dkt. 18 at 28 (quoting *Doe I*, 139 F. Supp. 3d at 149)]. Therefore, "[a]lthough the court did surmise that it was 'reasonable' for the agency to interpretate the statute as mandating reporting [of] either a 'voluntary' or 'involuntary' 'surrender,' this did not influence the adjudication of Dr. Doe's claim because the administrative record did not 'substantially contribute to a determination that the [Report's] classification as a 'voluntary surrender of clinical privileges' was inaccurate, versus

9

merely disputed." *Id.* (quoting *Doe I*, 139 F. Supp. 3d at 151). *Loper Bright* unquestionably "overruled" *Chevron*, but that does not amount to a talismanic exception to *res judicata*. 144 S. Ct. at 2273. Dr. Doe's objection [Dkt. 22, ¶ 5] is overruled.[3]

### E. Dr. Doe's employment situation is not a new fact

Dr. Doe argues that he successfully invoked the change-in-fact exception to *res judicata* because "after the 2020 final judgment …, the [Adverse Action Report] has completely foreclosed Doe's ability to obtain employment as a cardiothoracic surgeon in the U.S." [Dkt. 22, ¶ 6]. The Fifth Circuit has recognized a change-in-fact exception to *res judicata*. *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 448 (5th Cir. 2016). The change must be "significant," *id.* at 448–49 (citations omitted), and new "operative facts in a complaint do[] not defeat *res judicata* if the plaintiff had the opportunity to effectively litigate the underlying matter in the first instance." *Nix*, 62 F.4th at 930 n.9 (alteration in original) (citation omitted).

What concerns the Court about this argument is that it appears to be another attempt by Dr. Doe to present a fact as "new" when it is clearly not. *See* [Dkt. 18 at 25 ("What troubles the undersigned though is that Dr. Doe packages this evidence as 'new' when in fact he collectively included all of it in two motions that he filed during the D.C. Action.")]. Before the D.C. district court, Dr. Doe had "characterize[d] the existence of the Adverse Action Report as being the basis for [his] employment difficulties and, therefore, the change in his status (employable to unemployable)." *Doe I*, 139 F. Supp. 3d at 163. The lack of novelty is only made more apparent by the fact that Dr. Doe's instant complaint never claimed that his employment trouble began *after* the conclusion of the D.C. Action. *See* [Dkt. 2, ¶¶ 344–49]. Dr. Doe's objection [Dkt. 22, ¶ 6] is

---

[3] The Court also notes that Dr. Doe does not address the report's observation that "*Loper Bright* did 'not call into question prior cases that relied on the *Chevron* framework.'" [Dkt. 18 at 29 n.12 (quoting 144 S. Ct. at 2273)]. Like the report, the Court does not speculate on how to square that with *res judicata's* change-in-law exception, given that the report correctly found that Dr. Doe did not properly invoke the exception.

overruled. *See Cervantes v. Ocwen Loan Servicing, LLC*, No. 5:19-CV-7, 2019 WL 6003129, at *5 (S.D. Tex. Aug. 28, 2019) ("Simply alleging additional facts or raising new theories of liability does not survive the defense of *res judicata*. Rather, Plaintiff must show that the misconduct occurred after the Court's [judgment] which Plaintiff has failed to plead.") (alteration in original).

### F. *Res judicata* bars Dr. Doe's second cause of action

Finally, Dr. Doe objects that "*res judicata* does not bar [his] Legislative Vesting Clause argument." [Dkt. 22, ¶ 8]. The report found that *res judicata* barred Dr. Doe's second cause of action alleging that the Act is an unconstitutional delegation of congressional authority in violation of the nondelegation doctrine because he could have raised the claim before the D.C. district court and failed to do so. [Dkt. 18 at 29–31]. Dr. Doe argued that the United States Supreme Court's nondelegation doctrine jurisprudence had changed, thus permitting him to use the change-in-law exception to overcome *res judicata*. *Id.* at 30–31. As Judge Stetson explained, the nondelegation doctrine has remained unchanged for nearly one-hundred years and *res judicata* therefore applied. *Id.*

Dr. Doe now objects that the Fifth Circuit's nondelegation doctrine jurisprudence changed in *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446 (5th Cir. 2022). [Dkt. 22, ¶ 8]. First, Dr. Doe never premised his change-in-law exception on *Jarkesy* in his responsive pleadings. *See* [Dkts. 2, 12, 15, 17]. Even had Dr. Doe done so, the *Jarkesy* panel did not change the doctrine, but ruled "[a]ccording to the Supreme Court's more recent formulations of that longstanding rule [that] Congress may grant regulatory power to another entity only if it provides an 'intelligible principle' by which the recipient of the power can exercise it." *Jarkesy*, 34 F.4th at 460–61 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928))). Thus, the nondelegation doctrine has remained unchanged since 1928

11

and no change is necessary from this Court with respect to the report's finding. Dr. Doe's objection [Dkt 22, ¶ 8] is overruled.

### G. Dr. Doe's objections are overruled

The Court has conducted a *de novo* review of Dr. Doe's objections consistent with the pleadings, briefing, and applicable law. *See* FED. R. CIV. P. 72(b). After careful consideration, Dr. Doe's objections [Dkt. 22] are OVERRULED. The Report and Recommendation of the United States Magistrate Judge [Dkt. 18] is ADOPTED as to Plaintiff Dr. Doe's Motion to Transfer [Dkt. 5] and Defendant U.S. Department of Health and Human Services's Motion to Dismiss [Dkt. 11].

## II. Conclusion and Order

For the foregoing reasons, Plaintiff Dr. John Doe's objections [Dkt. 22] are **OVERRULED**. Accordingly, the Report and Recommendation of the United States Magistrate Judge [Dkt. 18] is **ADOPTED** in full. Defendant U.S. Department of Health and Human Services's Motion to Dismiss [Dkt. 11] is **GRANTED** and Plaintiff Dr. John Doe's Motion to Transfer [Dkt. 5] is **DENIED**. A Final Judgment will be issued forthwith.

**SIGNED this 8th day of November, 2024.**

Michael J. Truncale
United States District Judge